IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JESSICA MCELYEA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STARS HUNTSVILLE, LLC, )<br>)<br>Defendant. ) | Civil Case No.:<br><br>**JURY DEMANDED** |

## COMPLAINT

**COMES NOW** Plaintiff, Jessica McElyea ("Plaintiff" or "McElyea"), by and through her undersigned counsel of record, and files this Complaint against Stars Huntsville, LLC (d/b/a Stars and Strikes Entertainment) ("Defendant" or "Stars"). As grounds for this Complaint, Plaintiff states the following:

### JURISDICTION AND VENUE

1. This is a suit authorized and brought to secure the protection of and to redress the deprivation of rights secured by the Americans with Disabilities Act of 1990, as amended, codified at 42 U.S.C. §12101 et seq. (the "ADA").

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343.

3. The unlawful employment practices described herein were committed in Madison County, Alabama; as such, venue lies in the United States District Court for the Northern District of Alabama, Northeastern Division, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. McElyea is a citizen of the United States of America, who currently resides in Limestone County, Alabama.

5. McElyea is over the age of nineteen (19) years.

6. Defendant is an employer, in the State of Alabama, within the meaning of 42 U.S.C. § 12111(5) in that it engages in an industry affecting commerce and employed fifteen (15) or more employees for the requisite duration under the ADA.

7. During all times relevant to this Complaint, Defendant conducted business throughout Alabama, with a physical location in Madison County, Alabama, with an address of 930 Old Monrovia Rd. NW, Huntsville, AL 35806.

8. Defendant was McElyea's employer during all times relevant to this Complaint.

## ADMINISTRATIVE EXHAUSTION

9. McElyea filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), and the EEOC received it on November 23, 2021. Charge No. 420-2021-02700 (the "Charge") alleged that McElyea was subjected to discrimination based on her disability, in violation of the ADA. (See **Exhibit A**).

10. The EEOC issued a Dismissal and Notice of Rights (the "RTS") for the Charge on October 24, 2022. (See **Exhibit B**).

11. This Complaint is filed within ninety (90) days of McElyea's receipt of the RTS.

12. McElyea has thus exhausted all administrative remedies available prior to filing this Complaint.

## FACTS

13. McElyea suffers from Epilepsy (hereinafter referred to as "Health Condition").

14. McElyea's Health Condition is a qualifying disability under the ADA.

15. Defendant hired McElyea on or about April 15, 2021, to work as a Bar Supervisor (hereinafter referred to as "Assigned Position").

16. McElyea was and is qualified to perform the essential functions and duties of her Assigned Position.

17. Upon hire, McElyea disclosed her Health Condition to Defendant, including the Assistant General Manager, John Chestnut ("Chestnut").

18. On July 29, 2021, McElyea started feeling symptoms indicating an epileptic seizure was imminent.

19. McElyea believed she needed medical attention.

20. McElyea immediately informed the office manager, Lindsay Stewart ("Stewart") of her concerns about an imminent seizure and need for medical attention.

21. Stewart instructed McElyea to contact Chestnut to determine if he was available to come in early as McElyea's replacement.

22. After contacting Chestnut, he advised, "I will do my best, I'm not sure if I will be able to make it much sooner at this point but talk to Lindsey and she may be able to help you out."

23. Shortly thereafter, on July 29, 2021, McElyea suffered an epileptic seizure at work and lost consciousness.

24. McElyea was transported to Madison Hospital by ambulance.

25. On the evening of July 30, 2021, Chestnut texted McElyea asking whether she was "able to get the return to work authorization from your doctor?"

26. McElyea responded, "I believe I'm authorized for tomorrow, but if for some reason that's not the case I will let you know asap."

27. McElyea's medical provider later referred her to see a specialist at the University of Alabama Birmingham ("UAB") for the morning of August 4, 2021, for further evaluations.

28. McElyea texted Chestnut on July 31, 2021, stating that her medical provider "is sending [her] to another specialist at UAB on Wednesday morning and [she] will have to get [her] release to work from them after that appointment."

29. On August 4, 2021, McElyea received a letter from her medical provider which stated, "Ms. Jessica McElyea is a patient at the UAB Epilepsy

Center. She is being treated for seizures she is currently on medical treatment for it. She is cleared to return to work WITH restrictions." (hereinafter referred to as "Return to Work Authorization").

30. The Return to Work Authorization specifically recommended that McElyea "maintain regular and equal shifts in order to establish a regular sleep cycle as sleep deprivation is a trigger for her seizures."

31. On August 5, 2021, McElyea provided Chestnut and Ashley Denson ("Denson"), Defendant's General Manager, with a copy of the Return to Work Authorization.

32. McElyea was scheduled to work on August 7, 2021, and August 8, 2021.

33. Defendant did not permit McElyea to work as scheduled on August 7, 2021, nor August 8, 2021.

34. On August 5, 2021, McElyea was informed that since she left via ambulance, Tom Marshall ("Marshall"), the Defendant's Human Resources Manager would need to approve McElyea's return to work.

35. McElyea was then directed to attend a Zoom call on August 9, 2021, with Chestnut, Denson, Marshall, and Stewart to discuss her return.

36. During the Zoom meeting, McElyea's accommodation request to "maintain regular and equal shifts" was patently denied.

37. McElyea's employment was unlawfully terminated during the August 9, 2021, Zoom call.

38. During the call, Defendant did not engage in an interactive discussion with McElyea regarding her accommodation request or propose an alternative accommodation.

39. Defendant did not offer any alternative position to McElyea even though positions were available.

40. Defendant's actions in terminating McElyea resulted in significant financial and emotional harm to McElyea.

## COUNT I- DISABILITY DISCRIMINATION UNDER THE ADA

41. McElyea suffers from Epilepsy.

42. McElyea's Health Condition is a qualifying disability under the ADA.

43. McElyea was and is qualified to perform the essential functions and duties of her Assigned Position.

44. Upon hire, McElyea disclosed her Health Condition to Defendant, including the Assistant General Manager, Chestnut.

45. On July 29, 2021, McElyea started feeling symptoms indicating an epileptic seizure was imminent.

46. McElyea believed she needed medical attention.

47. McElyea immediately informed the office manager, Stewart of her concerns about an imminent seizure and need for medical attention.

48. Stewart instructed McElyea to contact Chestnut to determine if he was available to come in early as McElyea's replacement.

49. After contacting Chestnut, he advised, "I will do my best, I'm not sure if I will be able to make it much sooner at this point but talk to Lindsey and she may be able to help you out."

50. Shortly thereafter, on July 29, 2021, McElyea suffered an epileptic seizure at work and lost consciousness.

51. McElyea was transported to Madison Hospital by ambulance.

52. On the evening of July 30, 2021, Chestnut texted McElyea asking whether she was "able to get the return to work authorization from your doctor?"

53. McElyea responded, "I believe I'm authorized for tomorrow, but if for some reason that's not the case I will let you know asap."

54. McElyea's medical provider later referred her to see a specialist at UAB for the morning of August 4, 2021, for further evaluations.

55. McElyea texted Chestnut on July 31, 2021, stating that her medical provider "is sending [her] to another specialist at UAB on Wednesday morning and [she] will have to get [her] release to work from them after that appointment."

56. On August 4, 2021, McElyea received a letter from her medical provider which stated, "Ms. Jessica McElyea is a patient at the UAB Epilepsy Center. She is being treated for seizures she is currently on medical treatment for it. She is cleared to return to work WITH restrictions." (hereinafter referred to as "Return to Work Authorization").

57. The Return to Work Authorization specifically recommended that McElyea "maintain regular and equal shifts in order to establish a regular sleep cycle as sleep deprivation is a trigger for her seizures."

58. On August 5, 2021, McElyea provided Chestnut and Denson, Defendant's General Manager, with a copy of the Return to Work Authorization.

59. McElyea was scheduled to work on August 7, 2021, and August 8, 2021.

60. Defendant did not permit McElyea to work as scheduled on August 7, 2021, nor August 8, 2021.

61. On August 5, 2021, McElyea was informed that since she left via ambulance, Marshall, the Defendant's Human Resources Manager would need to approve McElyea's return to work.

62. McElyea was then directed to attend a Zoom call on August 9, 2021, with Chestnut, Denson, Marshall, and Stewart to discuss her return.

63. During the Zoom meeting, McElyea's accommodation request to "maintain regular and equal shifts" was patently denied.

64. McElyea's employment was unlawfully terminated during the August 9, 2021, Zoom call.

65. During the call, Defendant did not engage in an interactive discussion with McElyea regarding her accommodation request or propose an alternative accommodation.

66. Defendant did not offer any alternative position to McElyea even though positions were available.

67. Defendant's actions in terminating McElyea resulted in significant financial and emotional harm to McElyea.

## COUNT II- FAILURE TO ACCOMMODATE

68. McElyea suffers from Epilepsy.

69. McElyea's Health Condition is a qualifying disability under the ADA.

70. McElyea was and is qualified to perform the essential functions and duties of her Assigned Position.

71. On August 4, 2021, McElyea received a letter from her medical provider which stated, "Ms. Jessica McElyea is a patient at the UAB Epilepsy Center. She is being treated for seizures she is currently on medical treatment for it.

She is cleared to return to work WITH restrictions." (hereinafter referred to as "Return to Work Authorization").

72. The Return to Work Authorization specifically recommended that McElyea "maintain regular and equal shifts in order to establish a regular sleep cycle as sleep deprivation is a trigger for her seizures."

73. On August 5, 2021, McElyea provided Chestnut and Denson, Defendant's General Manager, with a copy of the Return to Work Authorization.

74. McElyea was scheduled to work on August 7, 2021, and August 8, 2021.

75. Defendant did not permit McElyea to work as scheduled on August 7, 2021, nor August 8, 2021.

76. On August 5, 2021, McElyea was informed that since she left via ambulance, Marshall, the Defendant's Human Resources Manager would need to approve McElyea's return to work.

77. McElyea was then directed to attend a Zoom call on August 9, 2021, with Chestnut, Denson, Marshall, and Stewart to discuss her return.

78. During the Zoom meeting, McElyea's accommodation request to "maintain regular and equal shifts" was patently denied.

79. McElyea's employment was unlawfully terminated during the August 9, 2021, Zoom call.

80. During the call, Defendant did not engage in an interactive discussion with McElyea regarding her accommodation request or propose an alternative accommodation.

81. Defendant did not offer any alternative position to McElyea even though positions were available.

82. Defendant's actions in terminating McElyea resulted in significant financial and emotional harm to McElyea.

**WHEREFORE,** Plaintiff respectfully requests this Court grant to Plaintiff the following:

    A.    Back pay for lost income and any other compensatory damages;

    B.    Reinstatement or front pay if the Court determines reinstatement is impractical;

    C.    Liquidated damages equal to the amount of back pay;

    D.    Punitive damages;

    E.    A reasonable attorneys' fee;

    F.    Plaintiff's costs and expenses;

    G.    Interest on all monies owed; and

    H.    Any and all other relief the Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted on this the 20th day of January 2023.

                              Respectfully submitted,

                              /s/ *Meagan M. Corcoran*
                              Meagan M. Corcoran (ASB-4976-D34B)
                              Mitch G. Allen (ASB-6947-A54M)
                              Anthony D. Michel (ASB-6809-064M)
                              *Attorneys for Plaintiff*

**Michel | King**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Telephone: (205) 980-5700
Facsimile:  (205) 994-2819
Meagan@wmalabamalaw.com
Mitch@wmalabamalaw.com
Anthony@wmalabamalaw.com


**DEFENDANT WILL BE SERVED VIA PROCESS SERVER AT THE FOLLOWING ADDRESS:**

Stars Huntsville, LLC
r/a Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104


                              /s/ *Meagan M. Corcoran*
                              Attorney for Plaintiff